# 14-294-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

TAWANNA FRASIER, on behalf of herself and all others similarly situated,

*Plaintiff-Appellant,*

—against—

STANLEY BLACK & DECKER, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT

SANFORD P. DUMAIN
MILBERG LLP
1 Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 594-5300

DAVID A. SLOSSBERG
HURWITZ, SAGARIN, SLOSSBERG
& KNUFF, LLC
147 North Broad Street
Milford, Connecticut 06460
(203) 877-8000

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................. iii

STATEMENT OF JURISDICTION ...................................... 1

ISSUES PRESENTED FOR REVIEW ................................... 1

STATEMENT OF THE CASE ............................................ 2

SUMMARY OF ARGUMENT ............................................ 5

ARGUMENT ................................................................ 7

I.   STANDARD FOR REVIEW .......................................... 7

II.  THE DISTRICT COURT ERRED IN DISMISSING CLASS
     ALLEGATIONS ....................................................... 8

     A.  THE DISTRICT COURT PREMATURELY DISMISSED
         PLAINTIFF'S CLASS ALLEGATIONS WHERE IT
         ADDRESSED THE TYPICALITY ISSUE PROPERLY
         DECIDED ONLY ON A RULE 23 CLASS CERTIFICATION
         MOTION ......................................................... 9

     B.  PLAINTIFF'S CLAIMS ARE TYPICAL OF THOSE OF
         ABSENT CLASS MEMBERS ................................... 11

III. THE DISTRICT COURT ERRED BY DISMISSING THE
     FEDERAL WARRANTY CLAIM UNDER THE
     MAGNUSON-MOSS ACT ............................................ 15

IV.  PLAINTIFF HAS STANDING TO ASSERT A CLAIM
     AGAINST DEFENDANT UNDER CUTPA ......................... 16

     A.  PLAINTIFF NEED NOT BE A RESIDENT, NOR
         HAVE PURCHASED A PRODUCT, NOR HAVE BEEN
         INJURED IN CONNECTICUT TO ASSERT A CLAIM
         UNDER CUTPA ................................................ 16

i

PAGE

1. A CUTPA Plaintiff Need Not Be A Resident
   of Connecticut ................................................ 16

2. A Plaintiff Need Not Purchase a Product in Connecticut
   Nor Have Been Injured in Connecticut in Order to Assert
   a Claim Under CUTPA....................................... 17

3. Plaintiff-Appellant's Complaint Alleges a Sufficient
   Nexus Between Defendant's Violation and the State of
   Connecticut to Support an Application of CUTPA ......... 19

B. PLAINTIFF-APPELLANT MAY SEEK RELIEF ON BEHALF
   OF A CLASS INJURED BY DEFENDANT'S CONDUCT..... 19

C. THE DISTRICT COURT IGNORED ESTABLISHED
   CASELAW THAT PLAINTIFF NEED NOT PROVE
   INDIVIDUAL RELIANCE UNDER CUTPA ................... 20

V. THE DISTRICT COURT IMPROPERLY IGNORED THE
   SUPREME COURT'S DECISION IN *SHADY GROVE*.............. 23

A. THE COURT NEED NOT ADDRESS ISSUES RAISED BY
   *SHADY GROVE* ................................................ 23

B. CUTPA AND RULE 23 ........................................... 24

C. CONN. GEN. STAT. § 42-110G(B) IS A PROCEDURAL
   RULE THAT CONFLICTS WITH FEDERAL RULE OF
   CIVIL PROCEDURE 23........................................... 28

CONCLUSION........................................................... 29

# TABLE OF AUTHORITIES

PAGE

## Cases

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395, 2013 U.S. Dist LEXIS 184232,
(E.D.N.Y. July 17, 2013) ……………………………………… 14

*Am. Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.*,
No. 1:09-cv-1162, 2010 WL 2998472
(W.D. Mich. July 28, 2010) ……………………………… 27

*Anderson v. Jamba Juice Co.*,
888 F. Supp. 2d 1000 (N.D. Cal. 2012) ………………… 14

*Ashcoft v. Iqbal*,
556 U.S. 662 (2009) …………………………………… 7

*Aspinall v. Philip Morris Cos., Inc.*,
813 N.E.2d 476 (Mass. 2004) …………………………… 21

*Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV*,
230 Conn. 148, 645 A.2d 505 (Conn. 1994) …………… 21

*Aurigemma v. Arco Petroleum Prods. Co.*,
734 F. Supp. 1025 (D. Conn. 1990) …………………… 21

*Blagman v. Apple Inc.*,
No. 12 Civ. 5453, 2013 U.S. Dist. LEXIS 71280
(S.D.N.Y. May 20, 2013) ……………………………… 9, 10

*Blessing v. Sirius XM Radio, Inc.*,
775 F. Supp. 2d 650 (S.D.N.Y. 2011),
*aff'd* 507 Fed. Appx. 1 (2d Cir. 2012),
*cert. denied*, 134 S. Ct. 402 (U.S. 2013) ………………… 22

*Brown v. Hain Celestial Group, Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012) ………………… 14

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010) …………………………… 11

iii

PAGE

*Calibuso v. Bank of Am. Corp.*,
No. 10-CV-1413 (JFB) (ETB), 2012 U.S. Dist.
LEXIS 139606 (E.D.N.Y. Sept. 27, 2012) .......................... 9

*Cardenas v. NBTY, Inc.*,
870 F. Supp. 2d 984 (E.D. Cal. 2012) .............................. 15

*Caridad v. Metro-North Commuter R.R.*,
191 F.3d 283 (2d Cir. 1999) ...................................... 12

*Carideo v. Dell, Inc.*,
706 F. Supp. 2d 1122 (W.D. Wash. 2010) .......................... 14

*Cassese v. Wash. Mut., Inc.*,
255 F.R.D. 89 (E.D.N.Y. 2008) .................................... 14

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) .................................. 13

*Chenensky v. New York Life Ins. Co.*,
No. 07 Civ. 11503, 2011 U.S. Dist. LEXIS 48199
(S.D.N.Y. Apr. 27, 2011), *aff'd*, 730 F.3d 137 (2d Cir. 2013) ....... 8, 9

*Cirone-Shadow v. Union Nissan*,
955 F. Supp. 938 (N.D. Ill. 1997) ................................ 22

*Clark v. Penna*,
No. CV126030341, 2013 Conn. Super. LEXIS 9
(Conn. Super. Ct. Jan. 2, 2013) .................................. 16

*Coastal Conservation Assn. v. Locke*,
No. 2:09-cv-641, 2010 WL 1401680 (M.D. Fla. April 6, 2010) ... 27

*Cohen v. Elephant Wireless, Inc.*,
No. 03-CV-4058, 2004 U.S. Dist. LEXIS 16583
(S.D.N.Y. Aug. 13, 2004) .......................................... 8

*Country Club Associates v. Shaw's Supermarkets, Inc.*,
645 F. Supp. 2d 243 (D. Conn. 2009) .............................. 18

iv

PAGE

*Diesel Injection Serv. v. Jacobs Vehicle Equipment*,
    No. CV98582400S, 23 Conn. L. Rptr. 621,
    1998 WL 950986 (Conn. Super. Ct. Dec. 4, 1998) .................. 18

*Donohoe v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ............................... 14

*Giovanniello v. ALM Media, LLC*,
    No. 3:09-cv-1409, 2010 WL 3528649
    (D. Conn. Sept. 3, 2010) (dicta) ...................................... 27

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) ............................................ 13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................ 13

*Hecht v. United Collection Bureau, Inc.*,
    691 F.3d 218 (2d Cir. 2012) ........................................... 7

*Henry v. Lehman Commercial Paper, Inc.*,
    (*In re First Alliance Mortg. Co.*), 471 F.3d 977 (9th Cir. 2006) ... 12

*Hinchliffe v. Am. Motors Corp.*,
    184 Conn. 607, 440 A.2d 810 (Conn. 1981) ....................... 21

*In re Katrina Canal Breaches Litig.*,
    401 Fed. Appx. 884 (5th Cir. 2010) ................................. 26

*In re On Star Contract Litig.*,
    No. 2:07-MDL-01867, 2010 WL 3516691
    E.D. Mich. Aug. 25, 2010) ............................................ 26

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    264 F.R.D. 603 (N.D. Cal. 2009) ..................................... 13

*In re Tableware Antitrust Litig.*,
    241 F.R.D. 644 (N.D. Cal. 2007) ..................................... 14

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ............................................... 22

v

PAGE

*In re Trilegiant Corp.*,
No. 3:12-CV-00396, 2014 U.S. Dist. LEXIS 42573
(D. Conn. Mar. 28, 2014) ............................................ 27

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002) ..................................... 13

*Ironforge.com v. Paychex, Inc.*,
747 F. Supp. 2d 384 (W.D.N.Y. 2010) ............................ 8

*Johns v. Bayer Corp.*,
280 F.R.D. 551 (C.D. Cal. 2012) .................................. 23

*Krueger v. New York Tel. Co.*,
163 F.R.D. 433 (S.D.N.Y. 1995) .................................. 12

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship.*,
168 F.R.D. 451 (E.D.N.Y. 1996) .................................. 13

*Leonard v. Abbott Labs., Inc.*,
No. 20-cv-4676, 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ....... 27

*Marcus Dairy, Inc. v. Rollin Dairy Corp.*,
No. 3:05-cv-589, 2008 WL 4425954
(D. Conn. Sept. 24, 2008) ......................................... 18

*Metro. Enter. Corp. v. United Tech. Int'l Corp.*,
No. 3:03-cv-1685, 2004 WL 1497545
(D. Conn. June 28, 2004) ................................. 16, 17, 18

*Meyers v. Cornwell Quality Tools, Inc.*,
41 Conn. App. 19, 674 A.2d 444 , 54 A.L.R. 5th 883 (1996) ...... 21

*Moore v. Paine Webber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ...................................... 23

*Parkinson v. Hyundai Motor Am.*,
258 F.R.D. 580 (C.D. Cal. 2008) .................................. 13

*Perlman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005) ....................................... 21

vi

PAGE

*Public Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ........................................ 13

*Quadrini v. Sikorsky Aircraft Div.*,
   505 F. Supp. 1049 (D. Conn. 1981) ................................. 16

*Rahman v. Smith & Wollensky Rest. Group, Inc.*,
   No. 06 Civ. 6198, 2008 U.S. Dist. LEXIS 2932
   (S.D.N.Y. Jan. 16, 2008) ............................................... 10

*Retained Realty, Inc. v. McCabe*,
   376 Fed. Appx. 52 (2d Cir. 2010) .................................. 26

*Richmond Fredricksburg & Potomac R.R. Corp. v.
   Aetna Cas. & Sur. Co.*,
   No. 3:96-cv-1054, 1997 WL 205783
   (D. Conn. Apr. 11, 1997) ............................................... 19

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .......................................... 13

*Rogers v. Capital One Servs., LLC*,
   No. 10-cv-398, 2011 U.S. Dist. LEXIS 17064
   (D. Conn. Feb. 19, 2011) ........................................... 8, 10

*Rosenthal v. Ford Motor Company*,
   462 F. Supp. 2d 296 (D. Conn. 2006) ............................ 16

*Schaefer v. Gen. Elec.*,
   No. 3:07-CV-0858, 2008 U.S. Dist. LEXIS 5552
   (D. Conn. Jan. 22, 2008) ................................................ 9

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
   691 F.3d 182 (2d Cir. 2012) ........................................... 7

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*,
   559 U.S. 393 (2010) ............................................... passim

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
   256 F.R.D. 284 (D. Conn. 2009) .................................... 23

vii

PAGE

*Stolt-Nielsen, S.A. v. Animalfeeds Int'l Corp.*,
    559 U.S. 662 (2010) .................................................. 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................. 7

*Titan Sports, Inc. v. Turner Broadcasting Sys., Inc.*,
    981 F. Supp. 65 (D. Conn. 1997) .................................... 18

*Trautz v. Weisman*,
    846 F. Supp. 1160 (S.D.N.Y. 1994) ................................. 13

*Ventura v. Ford Motor Corp.*,
    180 N.J. Super. 45, 433 A.2d 801 (App. Div. 1981) ............... 15

*Yates-Williams v. El Nihom*,
    268 F.R.D. 566 (S.D. Tex. 2010) .................................... 27

*Zelyony v. Porsche Cars N. Am., Inc.*,
    No., 08-20090-Civ, 2008 WL 1776975
    (S.D. Fla. Apr. 15, 2008) ............................................ 15

## Statutes

15 U.S.C. § 2301 et seq. ..................................................... passim

28 U.S.C. § 1291 ............................................................. 1

28 U.S.C. § 1332(d) .......................................................... 1

C.G.S. § 42-115e(a) .......................................................... 4

Conn. Gen. Stat. § 42-110(a) ................................................. 4

Conn. Gen. Stat. § 42-110a(4) ............................................... 17

Conn. Gen. Stat. § 42-110b(a) ............................................... 17

Conn. Gen. Stat. § 42-110g(a) ......................................... 16, 17, 20

Conn. Gen. Stat. 42-110g(b) ............................................. passim

Conn. Gen. Stat. Ann. § 42a-2-313 ........................................... 21

viii

PAGE

M.G.L.A. § 93A ..................................................... 21

New York Civil Practice Law and Rules § 901(b) ............. 24, 25, 28, 29

Section 349 of the New York General Business Law.................... 21

Section 349(h) ..................................................... 21

## Rules

Fed. R. Civ. P. 12(b)(6) .................................................. 16

Fed. R. Civ. P. 12(f) .................................................... 7

Fed. R. Civ. P. 23 .................................................. passim

Fed. R. Civ. P. 23(a)(3) .................................................. 11

Federal Rule of Civil Procedure 12(f) .................................... 8

Rule 23(d) ............................................................. 10

Rules 23(a) and 23(b) .................................................... 8

## Other Authorities

Rachel Miller & Lawrence Kanter, *Litigation Under Magnuson-Moss:
New Opportunities in Private Actions*, 13 U.C.C L.J. 10, 21 ........  15

## STATEMENT OF JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1332(d) because the case is a class action in which the matter in controversy exceeds $5,000,000 and members of the class and defendant were citizens of different states.

Appellate jurisdiction is conferred by 28 U.S.C. § 1291 because Appellant timely appealed from a final judgment from the United States District Court of Connecticut that disposes of all of the claims in the proceedings below. A-594 (Notice of Appeal); SPA-2 (Judgment).[1]

## ISSUES PRESENTED FOR REVIEW

1.    Did the district court err in striking the class action allegations, and as a result dismissing the action, especially since the dismissal itself was without any explanation?

2.    Did the district court err in dismissing the federal breach of warranty claim (Count V) under the Magnuson-Moss Act, under both federal and state warranty law, where plaintiff is not required to prove privity?

3.    Did the district court err in failing to find that plaintiff has standing to assert a claim under the Connecticut Unfair Trade Practices Act?

---

[1]  Citations to the Joint Appendix take the form: "A-_."  Citations to the Special Appendix take the form: "SPA-_."

4.     Did the district court fail to consider established case law that a plaintiff need not prove individual reliance under the Connecticut Unfair Trade Practices Act?

5.     Did the district court fail to consider *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), and the principle that section 42-110g(b) of the Connecticut Unfair Trade Practices Act is unenforceable as it conflicts with Fed. R. Civ. P. 23?

## STATEMENT OF THE CASE

Plaintiff-Appellant Tawanna Frasier appeals from the grant of the motion to dismiss and to strike class allegations by United States District Court for the District of Connecticut (Hon. William G. Young of the District of Massachusetts sitting by designation as a District of Connecticut judge).  The district court did not issue an opinion.

Plaintiff-Appellant filed this putative class action challenging the misrepresentations made to consumers in conjunction with the marketing, distribution and sale of the Black & Decker Pest Control Devices.  Black & Decker, a Connecticut corporation, markets and sells devices that plug into wall sockets advertised as "Pest Repellants" that "repel pests from your home or office."  A-13.

Plaintiff-Appellant Ms. Frasier, a consumer residing in Pennsylvania, sought to repel pests from her home. A-13. Ms. Frasier purchased the Black & Decker Pest Control Device after reading the label on the product and, despite using the product for approximately one year, it had no effect on the number of pests in her home. A-15.

Defendant-Appellee effectively branded its Devices as able to rid pests electronically from one's home or office. Defendant-Appellee has done this by making uniform advertising claims, repeating these claims on all of its labels, point of purchase materials such as hangtags, and even in the name of the device itself -- "Electronic Pest Repellers." The product name alone conveys that the device delivers the claimed benefits. Likewise, Defendant-Appellee expressly and falsely represented that the devices were effective in "repelling" rodents and insects. Defendant-Appellee marketed its Pest Control Devices with the representation that the devices would "repel pests" and reinforced this claim by displaying it on the product itself, on Black & Decker's website, and other online advertisements. A-14. This representation is central to Black & Decker's marketing of its Pest Control Devices. However, the Pest Control Devices do not perform as advertised because they do not "repel pests." Simply put, *the devices do not and cannot work as represented*.

Defendant-Appellee lacks any evidence that the devices have any effect at all on pests. Ultrasonic pest control devices have come under fire before. Specifically, in 2001 the Federal Trade Commission ("FTC") warned manufacturers of ultrasonic pest control devices to "examine their advertising and ensure they have competent and reliable scientific evidence to support claims that a product eliminates or repels pests." A-20. The FTC brought actions against several companies alleging a rodent's reaction to ultrasound is temporary at best and that ultrasound devices simply do not control insects. The overwhelming consensus of researchers who have investigated ultrasonic devices have found they are ineffective. Yet, sales predicated upon unsupported claims of efficacy continue unabated.

Plaintiff-Appellant, on behalf of herself and a class of persons who purchased the Pest Control Devices, filed a complaint asserting claims for violations of the Connecticut Unfair Trade Practices Act ("CUTPA") (Conn. Gen. Stat. § 42-110(a)), the Connecticut Unfair Sales Practices Act (C.G.S. § 42-115e(a)), Magnuson-Moss Act (15 U.S.C. § 2301 *et seq.*) and breach of express warranty. A-13. Plaintiff-Appellant seeks to represent a national class for all persons who have purchased the devices from August 13, 2009 to the present. A-13.

On November 1, 2012, Defendant-Appellee filed a Motion to Dismiss and to Strike Class Allegations. A-13  The district court issued an order on January 16, 2014 dismissing the complaint in its entirety, but failed to state the grounds upon which it was dismissing Plaintiff-Appellant's class allegations and the complaint. A-593.

On January 27, 2014, Plaintiff-Appellant timely filed a Notice of Appeal on behalf of herself and the proposed class, from the Order and Final Judgment dismissing the case with prejudice. A-594.

## SUMMARY OF ARGUMENT

Judge Young erred in striking Plaintiff's class allegations and dismissing the action.  This is a straightforward deceptive marketing action against a large company that falsely represented the effectiveness of its products.  In short, Plaintiff and the putative class members did not get what they paid for.  The practical effect of the district court's erroneous decision is a death-knell for Plaintiff and the putative class due to the amounts of their individual damages relative to the costs of proving their claims in court.

The district court erred by finding a lack of typicality, questioning whether the circumstances and use of defendant's product would vary by location and application.  The longstanding jurisprudence from this Court and others, however, holds that the typicality requirement is satisfied when class members' claims arise

5

from the same course of events – namely, defendant's marketing of its Pest Control Devices across all model lines with uniform misrepresentations – and each class member makes similar legal arguments to prove defendant's liability.

The district court ignored established law in dismissing Plaintiff's federal warranty claim under the Magnuson-Moss Act. One of the paramount purposes of the Act is to permit broad warranty claims without requiring proof of privity. Similarly, the Connecticut state warranty law contains no privity requirement where, as here, the claim sounds in tort.

Plaintiff has standing to assert a claim against defendant under the Connecticut Unfair Trade Practices Act ("CUTPA") and may seek relief on behalf of a class injured by defendant's conduct under Conn. Gen. Stat. 42-110g(b).

Finally, while an issue of first impression in this Court and an issue unnecessary to resolve in order to reverse the dismissal of plaintiff's claim since the plain language of CUTPA permits Plaintiff-Appellant to bring this class action, Rule 23 preempts CUTPA's purported restriction of class actions to Connecticut residents or those injured in Connecticut. The New York statute at issue in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), parallels that of CUTPA whereby both statutes purport to control the procedure by which claims can be brought as class actions. As a result of the conflict between

the state procedure and Fed. R. Civ. P. 23, the state procedure (here, Conn. Gen. Stat. § 42-110g(b)) is unenforceable in a federal court action.

## ARGUMENT

## I.   STANDARD FOR REVIEW

This Court reviews "a district court's grant of a motion to dismiss *de novo*, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Scholz Design, Inc. v. Sard Custom Homes, LLC,* 691 F.3d 182, 185 (2d Cir. 2012).  *See also Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218, 221 (2d Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcoft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[C]ourts must consider the complaint in its entirety," assessing "whether *all* of the facts alleged, taken collectively, give rise" to the required inferences. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322-23 (2007).

Federal Rule of Civil Procedure 12(f) allows a court to strike "from any pleading any insufficient defense." Fed. R. Civ. P. 12(f).  The standard that applies to a motion to strike is the "mirror image" of the standard on a 12(b)(6) motion to

dismiss for failure to state a claim and therefore is renewed *de novo*. *Cohen v. Elephant Wireless, Inc.*, No. 03-CV-4058, 2004 U.S. Dist. LEXIS 16583, *7 (S.D.N.Y. Aug. 13, 2004). "Motions to strike are generally looked upon with disfavor." *Chenensky v. New York Life Ins. Co.*, No. 07 Civ. 11503, 2011 U.S. Dist. LEXIS 48199, at *4 (S.D.N.Y. Apr. 27, 2011), *aff'd*, 730 F.3d 137 (2d Cir. 2013). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to 'preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010).

## II. THE DISTRICT COURT ERRED IN DISMISSING CLASS ALLEGATIONS

At the outset of the case, the district court concluded "that under Rule 23 the need for class action treatment does not outweigh the individual aspects of the case. So I strike the class action allegations." A-479. However, "[a] court may grant a motion to strike and order deletion of portions of a complaint's class claims where the basis for the motion to strike is distinct from the issues that 'would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b)' and it is 'clear that plaintiffs cannot possibly prove the deleted portions of those claims.'" *Rogers v. Capital One Servs., LLC*, No. 10-

8

cv-398, 2011 U.S. Dist. LEXIS 17064, at *24 (D. Conn. Feb. 19, 2011). *See also Blagman v. Apple Inc.,* No. 12 Civ. 5453, 2013 U.S. Dist. LEXIS 71280 (S.D.N.Y. May 20, 2013). The issues decided in this case were not distinct from those decided under a Rule 23 analysis as the district court's focus on typicality, discussed *infra* at pp. 11-14, would be properly decided only on a class certification motion with a fully developed record.

**A.    THE DISTRICT COURT PREMATURELY DISMISSED PLAINTIFF'S CLASS ALLEGATIONS WHERE IT ADDRESSED THE TYPICALITY ISSUE PROPERLY DECIDED ONLY ON A RULE 23 CLASS CERTIFICATION MOTION**

District courts in this circuit strongly disfavor tactical and inefficient attempts to pre-litigate or preempt class certification. "Motions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation." *Chenensky*, 2011 U.S. Dist. LEXIS 48199, at *3-4 (internal citations omitted) (citing cases).[2]

---

[2]  *See also Schaefer v. Gen. Elec.*, No. 3:07-CV-0858, 2008 U.S. Dist. LEXIS 5552, at *10 (D. Conn. Jan. 22, 2008) (denying motion to strike class claims as premature); *Calibuso v. Bank of Am. Corp.*, No. 10-CV-1413 (JFB) (ETB), 2012 U.S. Dist. LEXIS 139606, at *23, 47 (E.D.N.Y. Sept. 27, 2012) (denied motion to strike plaintiffs' class claims finding it premature to foreclose "plaintiff from having the ability to set forth its proof"); *Chenensky*, 2011 U.S. Dist. LEXIS 48199, at *10 ("[T]he harsh remedy of denial of class certification . . . is premature" where the analysis "would be based on assumptions of fact rather than on findings of fact.") (internal quotation marks and internal citations omitted).

Motions to strike class allegations "will typically be considered premature unless it addresses issues separate and apart from the issues that will be decided on a class certification motion." *Blagman*, 2013 U.S. Dist. LEXIS 71280, at *5 (citations omitted) (motion to strike class allegations was denied where the issues raised were the same ones that would be decided in connection with Rule 23).[3] Here, there had been no motion for class certification, and the district court prematurely decided on a motion addressed to the pleadings alone that the class could not fit within Rule 23, without due deliberations by the parties and the court on the class certification issues.

Likewise, the language of Rule 23(d) itself suggests that issues relating to whether a class could be certified should be decided only in connection with a motion to certify a class. Defendant's Motion to Dismiss and to Strike Class Allegations was an opposition to a motion for class certification that has not yet been made. Indeed, defendant set up a straw man class certification motion, arguing that the potential motion invented solely for the purpose of its motion, could not be granted. Of course, defendant did not present, as Plaintiff fully intended to present, a genuine class certification motion capable of being granted.

---

[3] *See also Rahman v. Smith & Wollensky Rest. Group, Inc.*, No. 06 Civ. 6198, 2008 U.S. Dist. LEXIS 2932, at *11-12 (S.D.N.Y. Jan. 16, 2008); *Rogers*, 2011 U.S. Dist. LEXIS 17064 (denying defendants motion to strike class allegations).

**B.    PLAINTIFF'S CLAIMS ARE TYPICAL OF THOSE OF ABSENT CLASS MEMBERS**

At the October 4, 2013 hearing, the district court continually questioned whether the circumstances of the use of the pest control devices would vary by location and application. A-470.  This was apparently the district court's entire analysis.  Such queries were misguided.  This is a deceptive marketing case, as pleaded in the complaint, where uniform, written misrepresentations of defendant's products were deceptive insofar as sound waves emitted by the devices do not work *at all, under any circumstances*.  In other words, Plaintiff-Appellant and the putative class members did not get what they paid for.  Plaintiff-Appellant fully anticipated offering expert testimony to demonstrate that the devices do not work as advertised, notwithstanding the individual circumstances of their use.  Plaintiff and the Class suffered a common injury, susceptible to common proof, that the district court chose to ignore: they paid for a product that defendant claimed repels pests when, in fact, it does not.

Typicality requires a plaintiff to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments").  The typicality prong of Rule 23(a) sets a low threshold, in that it does not require that

11

"the factual background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact 'occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) (quoting *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995)).

Each model of the Pest Control Devices represented that it would be effective in repelling pests. This uniform advertising claim applied to each and every Pest Control Device, regardless of any minor variation among the product line models. Neither the type of pest a class member sought to repel nor the size of the room in which the device was used has any bearing on the class allegations. It goes without saying that no consumer would purchase a Pest Control Device incapable of repelling pests.

The mere fact that a class member may have viewed the false and misleading language on a different model of the device, or seen an advertisement with a slight variation, is of no moment. Defendant uniformly represented that its Pest Control Devices would repel pests. A false or misleading advertising campaign need not "consist of a specifically-worded false statement repeated to each and every [member] of the plaintiff class." *Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortg. Co.),* 471 F.3d 977, 992 (9th Cir. 2006).

Indeed, "[t]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims." *Id.*; *See also Green v. Wolf Corp., 406 F.2d 291, 300 (2d Cir. 1968)* (to deny class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle . . . would destroy much of the utility of Rule 23") and cases cited below.

Courts have specifically recognized that "[t]he typicality requirement ***does not*** mandate that products purchased, methods of purchase, or even damages of the named plaintiffs must be the same as those of the absent class members." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) (emphasis added) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 261 (D.D.C. 2002).[4]  Here, Plaintiff alleges that Black & Decker marketed

---

[4]  *See also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (distinguishing *Wiener* and finding that all products were subject to the same general course of conduct: "[a]lthough plaintiff did not purchase each type of beverage carrying the misleading label, his claims are 'reasonably coextensive with those of absent members.'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Public Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 108-09 (S.D.N.Y. 2011) (a difference in damages among class members does not prevent a finding of typicality); *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994) ("plaintiffs claim differences among class members regarding damages are an insufficient basis to defeat class certification"); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008) (finding typicality even though the named plaintiffs did not purchase all cars at issue "because all claims arise from defendant's common scheme to misrepresent its warranty and withhold internal knowledge of common problems."); *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (typicality need not be absolute; rather, the named plaintiff and class members' claims simply must arise from "the same course of events" and require "similar legal arguments to prove the defendant's liability"); *Labbate-D'Alauro v. GC Servs. Ltd. P'ship.*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) (internal quotations and citations omitted) ("when the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact

each and every one of its Pest Control Devices -- across all model lines -- with the uniform misrepresentation that each and every device was effective in repelling pests.  Plaintiff's claims are typical of those of the absent class members.

Significantly, this case is no different from the numerous class action cases that have been allowed to proceed, involving such products as cold and flu remedies, electronics, dietary supplements and others, where the products did not work as advertised.  Indeed, the same conclusions advanced by the district court could have been, and often were, made in these many cases, but were appropriately rejected, allowing them to proceed to class certification.  *See, e.g.*, *Ackerman v. Coca-Cola Co.*, No. 09 CV 395, 2013 U.S. Dist LEXIS 184232, at *43 (E.D.N.Y. July 17, 2013) (typicality satisfied where a reasonable consumer would find vitaminwater's name and labeling misleading).[5]

---

patterns which underlie individual claims"); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649 (N.D. Cal. 2007) ("The fact that named plaintiffs purchased different types of tableware products at different prices from those of the absent class members does not render their claim atypical.").

[5] *See also Cassese v. Wash. Mut., Inc., 255 F.R.D. 89, 97 (E.D.N.Y. 2008)* (variations among the mortgage agreements at issue did not destroy typicality as to the class); *Donohoe v. Apple, Inc.*, 871 F. Supp. 2d 913, 921-22 (N.D. Cal. 2012) (different iPhone models distinct, but similar, should be analyzed under typicality requirement of Rule 23 after discovery); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1134 (W.D. Wash. 2010) (permitted to sue over misrepresentations regarding computer models they did not purchase, same core factual allegations); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005-06 (N.D. Cal. 2012) (can bring claim on behalf of other flavors not purchased) (falsely represent "all natural"); *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012) (properly addressed at certification stage, not motion to dismiss) (cosmetic products not organic); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984 (E.D. Cal. 2012) (misrepresented and sold joint supplements, similar products not purchased may be included).

## III.    THE DISTRICT COURT ERRED BY DISMISSING THE FEDERAL WARRANTY CLAIM UNDER THE MAGNUSON-MOSS ACT

Count V of Plaintiff-Appellant's complaint asserts a federal warranty claim under the Magnuson-Moss Act, which provides federal question jurisdiction and the right to bring nationwide class actions in federal court for classes larger than 100 persons.  There was simply no basis to dismiss the federal warranty claim since it was properly pleaded based on uniform written warranties on the product's packaging.

While failing to issue an opinion, the district court asked several questions at oral argument about the issue of privity, suggesting that it believed that a lack of privity provides grounds for dismissal.  Such a belief would be contrary to the law, as one of the overriding purposes of Magnuson-Moss is to permit broad warranty claims without requiring proof of privity.  *See, e.g., Zelyony v. Porsche Cars N. Am., Inc.*, No. 08-20090-Civ, 2008 WL 1776975 (S.D. Fla. Apr. 15, 2008); *Ventura v. Ford Motor Corp.*, 180 N.J. Super. 45, 433 A.2d 801 (App. Div. 1981); Rachel Miller & Lawrence Kanter, *Litigation Under Magnuson-Moss: New Opportunities in Private Actions*, 13 U.C.C L.J. 10, 21–23 (1980).

Likewise, Connecticut warranty law contains no privity requirement where, as here, the claim sounds in tort (i.e., misrepresentation).  This basic principle was articulated by Chief Judge Janet Hall in *Rosenthal v. Ford Motor Company*, 462 F. Supp. 2d 296 (D. Conn. 2006), where the court noted the distinction between cases

15

sounding in tort and those sounding in contract. *See also Quadrini v. Sikorsky Aircraft Div.*, 505 F. Supp. 1049, 1051 (D. Conn. 1981); *Clark v. Penna*, No. CV126030341, 2013 Conn. Super. LEXIS 9, *11 (Conn. Super. Ct. Jan. 2, 2013) ("When a defendant puts a commodity for personal use on the market and the product fails to measure up to the defendant's express representations or warranties, lack of privity is not a bar to suit") (citations omitted).

## IV.  PLAINTIFF HAS STANDING TO ASSERT A CLAIM AGAINST DEFENDANT UNDER CUTPA

### A.    PLAINTIFF NEED NOT BE A RESIDENT, NOR HAVE PURCHASED A PRODUCT, NOR HAVE BEEN INJURED IN CONNECTICUT TO ASSERT A CLAIM UNDER CUTPA.

#### 1. A CUTPA Plaintiff Need Not Be A Resident of Connecticut.

Statutory standing to bring a CUTPA claim is set forth in Conn. Gen. Stat. § 42-110g(a), which states: "Any person who suffers any ascertainable loss of money, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 110b, may bring an action . . . ." This section contains no requirement that a CUTPA plaintiff be a resident of Connecticut. *See Metro. Enter. Corp. v. United Tech. Int'l Corp.*, No. 3:03-cv-1685, 2004 WL 1497545, at *4 (D. Conn. June 28, 2004) ("failure to plead residency or injury in Connecticut does not warrant dismissal under Fed. R. Civ. P. 12(b)(6).") As the *Metropolitan Enterprise Corp.* court explained:

> That statute makes no distinction between residents and non-residents of Connecticut but permits "any person" suffering ascertainable loss resulting from a CUTPA violation to maintain an action in the judicial district in which the defendant resides or has his principal place of business or is doing business,. Conn. Gen. Stat. § 42-110b(a) in turn does not require injury inside Connecticut borders but, via Conn. Gen. Stat. § 42-110a(4) . . . focuses on the locus of the offending conduct, that is, whether it occurs "in" Connecticut. Thus, the statutory scheme permits out of state residents to bring a CUTPA action against a defendant located in Connecticut notwithstanding the locus of injury.

*Id.* As Judge Arterton further explained:

> Examination of statutory language and interpretive caselaw reveals no reason why a straightforward application of the phrase "in this State" would exclude the conduct alleged here: a Connecticut seller, in connection with the sale or the offering for sale of its jet engines, hatching and implementing a plan inside the borders of Connecticut the deceptive or unfair effect of which is felt outside those borders.

*Id.* at *7.

## 2. A Plaintiff Need Not Purchase a Product in Connecticut Nor Have Been Injured in Connecticut in Order to Assert a Claim Under CUTPA

There is no provision in Conn. Gen. Stat. § 42-110g(a) restricting standing to persons who purchased a product in Connecticut or were injured in the state. Although the statutory definition of "trade" and "commerce" in Conn. Gen. Stat. § 42-110a(4) limits the scope of CUTPA to conduct "in this state," both state and federal courts have interpreted this limitation not to require that the violation actually occur in Connecticut "if the violation is tied to a form of trade or commerce intimately associated with Connecticut, or if, where Connecticut choice-

17

of-law principles are applicable, those principles dictate application of Connecticut law." *Country Club Assocs. v. Shaw's Supermarkets, Inc.*, 645 F. Supp. 2d 243, 253 (D. Conn. 2009).

As explained in *Country Club*, "Connecticut has an interest in regulating unfair trade practices undertaken from the state by a company domiciled in the state, even where the effects of those practices may have their primary impact out of state or a choice of law analysis of a given transaction favors the application of out-of-state law." *Id.* (applying CUTPA to an action brought by a partnership with its place of business in Massachusetts concerning property situated in Massachusetts).[6]

---

[6] *See also Marcus Dairy, Inc. v. Rollin Dairy Corp.*, No. 3:05-cv-589, 2008 WL 4425954 at *14 (D. Conn. Sept. 24, 2008) (holding that New York corporation could assert a CUTPA claim against a Connecticut plaintiff alleged to have engaged in price discrimination because the plaintiff was a Connecticut corporation and "its actions, especially price setting which occurred at headquarters [were] 'intimately associated with Connecticut.'"); *Metro. Enter. Corp. v. United Techs. Int'l Corp.*, No. 3:03-cv-1685, 2004 WL 1497545, at *6-7 (D. Conn. June 28, 2004) (rejecting defendant's argument that the plaintiff failed to state a CUTPA claim because it both was not a resident of Connecticut and was not alleged to have suffered any injury in Connecticut because the plaintiff had alleged a sufficient nexus with Connecticut); *Diesel Injection Serv. v. Jacobs Vehicle Equipment*, No. CV98582400S, 23 Conn. L. Rptr. 621, 1998 WL 950986, at *6-7 (Conn. Super. Ct. Dec. 4, 1998) (holding that because the defendant had its principal place of business in Connecticut, it was logical to infer that where non-Connecticut franchises have an agent to distribute products manufactured by the company was intimately associated with Connecticut); *Titan Sports, Inc. v. Turner Broadcasting Sys., Inc.*, 981 F. Supp. 65, 72 (D. Conn. 1997) (holding that the CUTPA violation need not necessarily occur in Connecticut if it was tied to a form of trade or commerce intimately associated with Connecticut); *Richmond Fredricksburg & Potomac R.R. Corp. v. Aetna Cas. & Sur. Co.*, No. 3:96-cv-1054, 1997 WL 205783 at *2 (D. Conn. Apr. 11, 1997).

### 3. Plaintiff-Appellant's Complaint Alleges a Sufficient Nexus Between Defendant's Violation and the State of Connecticut to Support an Application of CUTPA.

Plaintiff-Appellant's Complaint alleges a sufficient nexus between Defendant's alleged conduct and the State of Connecticut. Defendant is a Connecticut corporation with offices in New Britain, Connecticut. Defendant's incorporation in Connecticut and its location in New Britain support the application of CUTPA as the violation is tied to a form of trade or commerce intimately associated with Connecticut. A-14-15. Because Plaintiff-Appellant has statutory standing to assert a CUTPA claim against Defendant, the district court erred in dismissing her individual claims pursuant to CUTPA.

### B. PLAINTIFF-APPELLANT MAY SEEK RELIEF ON BEHALF OF A CLASS INJURED BY DEFENDANT'S CONDUCT.

Seemingly uninterested in conducting a statutory analysis, Judge Young merely suggested that Plaintiff-Appellant "pursue them [Black & Decker] in the Connecticut Superior Court. If you win then you're in a position to say that this product is defective and then we'll see where we are." A-475. Rather, had the district court performed the proper analysis, it would have come to the obvious conclusion that Conn. Gen Stat. § 42-110g(b) confers a right of action to a nonresident plaintiff who might not have been directly injured in Connecticut to bring a class action under CUTPA. Conn. Gen. Stat. § 42-110g(b) provides that "[p]ersons entitled to bring an action under subsection (a) of this section may . . .

19

bring a class <u>action on behalf of themselves</u> and other persons similarly situated who are residents of this state or injured in this state to recover damages." (Emphasis Added). Plaintiff-Appellant satisfies the first requirement of § 42-110g(a) because she is, as discussed *supra*, entitled to bring an action pursuant to Conn. Gen. Stat. § 42-110g(a). Because Plaintiff-Appellant satisfies the first requirement of § 42-110g(a), she is entitled to, at a minimum, bring a class action on behalf of herself and other persons similarly situated who are residents of this state or injured in this state to recover damages. Conn. Gen. Stat. § 42-110g(b).

This interpretation of § 42-110g(b) makes sense: there are numerous class actions in which a resident of one state has been held to satisfy the typicality and adequacy of representation requirements necessary to permit the filing of a nationwide class action pursuant to Fed. R. Civ. P. 23. *See supra* at p. 14.

## C. THE DISTRICT COURT IGNORED ESTABLISHED CASE LAW THAT PLAINTIFF NEED NOT PROVE INDIVIDUAL RELIANCE UNDER CUTPA

During oral argument, the district court seemed to be operating under a misconception of Connecticut law when it suggested that Plaintiff-Appellant's claims should not proceed as a class because of an inability to demonstrate individual reliance. A-476. However, the Connecticut state courts have repeatedly held that "[t]he CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain." *Hinchliffe v. Am. Motors Corp.*, 184

20

Conn. 607, 617, 440 A.2d 810, 815-16 (Conn. 1981), *aff'd*, 192 Conn. 252 (Conn. 1984).[7]  Plaintiff repeatedly alleged throughout the complaint that she would not have purchased defendant's product if the material information had been disclosed. A-13.  Plaintiff amply alleged a causal nexus between the concealment of the material fact – namely, that the devices fail to repel pests – and the loss.  That is sufficient.  *See Aurigemma v. Arco Petroleum Prods. Co.*, 734 F. Supp. 1025, 1029 (D. Conn. 1990) ("Plaintiffs need not prove reliance [under CUTPA] or that the alleged unfair or deceptive representation became part of the basis of the bargain.").  Likewise, Plaintiff need not prove that Defendant acted with intent to violate the law.  *See, e.g.*, *Associated Inv. Co. Ltd. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 645 A.2d 505 (Conn. 1994) (holding that a claim under CUTPA does not require proof of intent).

Similarly, reliance is not an element of a breach of express warranty claim. Conn. Gen. Stat. Ann. § 42a-2-313.  All that need be shown is that the statement that is alleged to be breached accompanied the purchase of the product.  Here,

---

[7] *See also Associated Inv. Co. Ltd. Partnership v. Williams Assocs IV*, 230 Conn. 148, 158, 645 A.2d 505, 510 (Conn. 1994); *Meyers v. Cornwell Quality Tools, Inc.*, 41 Conn. App. 19, 34-36, 674 A.2d 444, 452-53, 54 A.L.R. 5th 883 (1996) (holding that the trial court did not err in instructing the jury that the plaintiffs need not prove reliance as part of their CUTPA claim; *cf. Perlman v. McDonald's Corp.*, 396 F.3d 508, 511-12 (2d Cir. 2005) (reversing district court's dismissal of consumer class action because section 349 of the New York General Business Law does not require proof of actual reliance despite the fact that section 349(h) permits private actions only by those "who have been injured" by reason of a violation of the statute); *Aspinall v. Philip Morris Cos., Inc.*, 813 N.E.2d 476, 486-92 (Mass. 2004), *aff'd*, 902 N.E.2d 421 (Mass. 2009), *remanded to* 2012 Mass. Super. LEXIS 218 (Mass. Super. Ct. 2012) (holding that under M.G.L.A. § 93A, a person who has been injured may bring an action and recover statutory damages without proof that they actually relied on the alleged misrepresentation).

Plaintiff alleges exactly this and that Defendant's marketing campaign reinforced these written promises. A-13, 16-17. Indeed, the subject product is called an "ultrasonic pest repeller."

Under the objective, reasonable person standard there is genuine issue of material fact as to whether customers would have done something differently. "[M]ateriality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *In re Tobacco II Cases,* 207 P.3d 20, 39 (Cal. 2009) (emphasis added) (internal quotations and citations omitted). *See also Blessing v. Sirius XM Radio, Inc.*, 775 F. Supp. 2d 650, 655 (S.D.N.Y. 2011), *aff'd*, 507 Fed. Appx. 1 (2d Cir. 2012), *cert. denied*, 134 S. Ct. 402 (U.S. 2013) ("A misstatement is material if 'a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.'") (citation omitted). Materiality is judged on an "objective standard." *Id.* (citing *Cirone-Shadow v. Union Nissan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997)). Whether Defendant's Pest Control Device advertising message was material and would have deceived reasonable consumers are issues readily susceptible to class-wide proof.

Moreover, the district court in Connecticut certified nationwide classes where, as here, standardized misleading misrepresentations contained similar

22

misrepresentations. *Spencer v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284, 301-03 (D. Conn. 2009). *See also Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1250 (2d Cir. 2002) (noting that in the case of a materially uniform misrepresentation, an individual plaintiff's receipt of and reliance upon the misrepresentation may be a simpler matter to determine); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (C.D. Cal. 2012) ("[w]hen plaintiffs are exposed to a common advertising campaign, common issues predominate. . . . Accordingly, the Court is not convinced by Bayer's argument that reliance is an individual issue and cannot be presumed.").

## V.    THE DISTRICT COURT IMPROPERLY IGNORED THE SUPREME COURT'S DECISION IN *SHADY GROVE*

### A. THE COURT NEED NOT ADDRESS ISSUES RAISED BY *SHADY GROVE*

This court need not address the issue of whether a plaintiff with standing to bring an action under CUTPA can represent a class of persons that includes members who are not Connecticut residents and who were not injured in Connecticut.   Plaintiff-Appellant addresses the issue since it was raised by defendant in the district court.  It is certainly possible for this Court to reverse the dismissal of plaintiff's claim and reverse the striking of class allegations without deciding what the scope of any certified class should be.

## B. CUTPA AND RULE 23

Any attempt to use Conn. Gen. Stat. § 42-110g(b) to limit members of a class in a CUTPA class action to residents of Connecticut or persons injured in Connecticut is unenforceable in a federal court action because it conflicts with Fed. R. Civ. P. 23. In *Shady Grove*, five justices found that Rule 23 preempts New York Civil Practice Law and Rules § 901(b), which purported to bar claims seeking a statutory penalty or minimum damages from being maintained as a class action in diversity actions in federal court. The Supreme Court determined that the certification of a class action under Rule 23 alleging violations of New York law did not violate the Rules Enabling Act, even though New York law purported to prohibit the petitioner's suit from proceeding as a class action. *Id*. at 406-11.

Writing for a plurality of four justices, Justice Scalia explained that Rule 23 "[b]y its terms . . . creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action . . . [and] provides a one size-fits-all formula for deciding the class-action question." *Id*. at 398-99. Justice Scalia went on to explain that a suit filed in federal court is governed by the Federal Rules of Civil Procedure and a state cannot "create exceptions to an individual rule as it sees fit . . . by enacting a separate statute overriding it in certain instances." *Id*. at 400. The Court made clear that:

> Rule 23 unambiguously authorizes *any* plaintiff, in *any* federal civil
> proceeding, to maintain a class action if the Rule's prerequisites are

24

met. We cannot contort its text, even to avert a collision with state law that might render it invalid.

*Id.* at 406 (emphasis in original) (citation omitted). The plurality described the term "procedural" as the judicial process for enforcing rights and duties recognized by substantive law and for justly administrating remedies and redress for infractions thereof. *Id.* at 408-15. Accordingly, the Court held that, because section 901(b) (like the Connecticut rule at issue here) addresses only the manner in which a claim can be filed and maintained, and does not ban the claim altogether, it conflicts with Rule 23, and was therefore preempted. *See id.* at 401.

Writing separately, Justice Stevens agreed with Justice Scalia that section 901(b) impermissibly conflicted with Rule 23, determining that the New York state law at issue was "a classically procedural calibration" attempting to balance competing goals of litigation similar to "filing fees or deadlines for briefs." *Id.* at 435 (Stevens, J., concurring in part and concurring in the judgment). Justice Stevens reasoned that Rule 23 would not preempt a state statute that is procedural in form, but which also is "so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423. Justice Stevens joined the majority in stating that New York's rule barring the procedural right to bring a class action was not "so intertwined," *see id.*, and the same conclusion applies here. *See also Stolt-Nielsen, S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 695-96 (2010) (citing the plurality opinion in *Shady Grove* for the proposition that

25

"rules allowing multiple claims . . . to be litigated together . . . neither change plaintiff's separate entitlements to relief nor abridge defendant's rights; they alter only how the claims are processed.").

The Second Circuit has not yet directly addressed which opinion in *Shady Grove* controls. In *Retained Realty, Inc. v. McCabe*, 376 Fed. Appx. 52 (2d Cir. 2010), the court noted that the decision in *Shady Grove* does not set forth a single test for whether a Federal Rule is procedural and thus consonant with the Rules Enabling Act, but that it was unnecessary to determine whether the plurality opinion or concurring opinion controlled because "[u]nder either of these tests, [they] find that Rule 54(b), like every other Federal Rule of Civil Procedure ever examined by the Supreme Court, is procedural." *Id.* at 55 n.1.

Lower courts addressing which opinion to follow are divided. Courts following Justice Scalia's approach in the *Shady Grove* plurality opinion include: *In re Katrina Canal Breaches Litig.*, 401 Fed. Appx. 884, 887 (5th Cir. 2010) (holding unavailing reliance on state decisions concerning class certification); *In re On Star Contract Litig.*, No. 2:07-MDL-01867, 2010 WL 3516691, at *1-4 (E.D. Mich. Aug. 25, 2010) (holding that plaintiff could bring a class action in federal court under the Michigan Consumer Protect Act, even though that act provided only for a class action on behalf of persons residing in or injured in Michigan and the named plaintiffs were non-residents); *Am. Copper & Brass, Inc. v. Lake City*

*Indus. Prods., Inc.*, No. 1:09-cv-1162, 2010 WL 2998472 (W.D. Mich. July 28, 2010) (holding that a federal class action could be maintained despite Michigan Court Rule 3.501 which prohibited maintaining a class action seeking a statutory penalty); *Yates-Williams v. El Nihom*, 268 F.R.D. 566, 569 (S.D. Tex. 2010) (holding that "[f]ederal courts are not bound to follow a state law that is in some sense 'substantive' if it conflicts with the Federal Rules"); *Giovanniello v. ALM Media, LLC*, No. 3:09-cv-1409, 2010 WL 3528649, at *3 (D. Conn. Sept. 3, 2010) (dicta), *aff'd on other grounds*, 660 F.3d 587 (2d Cir. 2011), *cert. granted and judgment vacated on other grounds,* 133 S. Ct. 159 (2012); *Coastal Conservation Assn. v. Locke*, No. 2:09-cv-641, 2010 WL 1401680, at *2 (M.D. Fla. April 6, 2010). Other lower courts have applied the analysis in Justice Stevens's concurring opinion. *See, e.g., Leonard v. Abbott Labs., Inc.*, No. 20-cv-4676, 2012 WL 764199, at *12-13 (E.D.N.Y. Mar. 5, 2012) (concerning the Ohio consumer Sales Practices Act); *In re Trilegiant Corp.*, No. 3:12-CV-00396, 2014 U.S. Dist. LEXIS 42573, *13 (D. Conn. Mar. 28, 2014).

### C. CONN. GEN. STAT. § 42-110G(B) IS A PROCEDURAL RULE THAT CONFLICTS WITH FEDERAL RULE OF CIVIL PROCEDURE 23

Whether examined under Justice Scalia's plurality opinion for four justices or Justice Stevens's concurrence in *Shady Grove*, it is clear that the purported Connecticut class action bar, Conn. Gen. Stat. § 42-110g(b), impermissibly

conflicts with Rule 23 because the statute is a procedural rule that purports to control what claims can be brought as class actions, restricting the circumstances under which a class action can be brought, akin to C.P.L.R. 901(b)'s restriction that was preempted by Rule 23. *See Shady Grove*, 559 U.S. at 432.

The plain language CUTPA makes clear that it is a purely procedural rule. The statute states:

> Persons entitled to bring an action under subsection (a) of this section may, ***pursuant to rules established by the judges of the Superior Court***, bring a class action on behalf of themselves and other persons similarly situated who are residents of this state or injured in this state to recover damages.

Conn. Gen. Stat. § 42-110g(b) (emphasis added).

Akin to the New York statute at issue in *Shady Grove*, the Connecticut class action bar is "designed as a procedural rule suggest[ing] it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies." *See Shady Grove*, 559 U.S. at 432. Further, the Connecticut class action bar is a procedural rule that does not create or shape substantive rights to bring a claim, but simply limits the manner in which that claim may be brought. C.P.L.R. 901(b) similarly sought to control what claims could be brought as class actions. *Id.* In this case, if the analysis in the *Shady Grove* plurality opinion is applied, the limitation in Conn. Gen. Stat. § 42-110g(b) concerning those on whose behalf a CUTPA class action may be brought conflicts

28

with Fed. R. Civ. P. 23 and is unenforceable. Even if the Court were to apply the standard in Justice Stevens's concurring opinion in *Shady Grove*, section 42-110g(b) cannot be applied in a federal court action because it is clearly procedural in that it governs only "the manner and the means by which the litigants' rights are enforced" rather than "alter[ing] the rules of decision by which [t]he court would adjudicate [those] rights . . . ." *Shady Grove*, 559 U.S. at 407. As discussed *supra* in Section IV.A., it is clear that Plaintiff and other non-residents of Connecticut may assert an individual claim under CUTPA. The <u>only</u> consequence of applying the limitation in section 42-110g(b) is to deny them the right to bring their claims in a class action. Conn. Gen. Stat. § 42-110g(b) in no way impacts the rules of decision by which the court will adjudicate their rights.

## CONCLUSION

For all of the foregoing reasons, Plaintiff-Appellant respectfully requests that the Court vacate and reverse the Order of the district court. Due to the need to interpret Connecticut law, Plaintiff-Appellant respectfully requests that the case be remanded to a district judge sitting in Connecticut.

Respectfully Submitted,

**MILBERG LLP**

*/s/ Sanford P. Dumain*
Sanford P. Dumain
MILBERG LLP
1 Pennsylvania Plaza, 49th Floor

29

New York, New York 10119
(212) 594-5300
(212) 868-1229 Fax

David A. Slossberg
**HURWITZ, SAGARIN,**
**SLOSSBERG & KNUFF, LLC**
147 North Broad Street
Milford, Connecticut 06460
(203) 877-8000
(203) 878-9800 Fax

*Attorneys for Plaintiff-Appellant*

Dated: May 21, 2014

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 7,440 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Respectfully Submitted,

**MILBERG LLP**

*/s/ Sanford P. Dumain*
Sanford P. Dumain
MILBERG LLP
1 Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 594-5300
(212) 868-1229 Fax

David A. Slossberg
**HURWITZ, SAGARIN,**
**SLOSSBERG & KNUFF, LLC**
147 North Broad Street
Milford, Connecticut 06460
(203) 877-8000
(203) 878-9800 Fax

*Attorneys for Plaintiff-Appellant*

Dated: May 21, 2014

SPECIAL APPENDIX

## TABLE OF CONTENTS

PAGE

Order of Dismissal, dated January 16, 2014. . . . . . . . . . . . . . . . . . . . . . . . . .  SPA-1

Judgment, dated January 16, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  SPA-2

**SPA-1**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Civil Action
No: 12-cv-1182-WGY

FRAISER
Plaintiff

v.

STANLEY BLACK & DECKER, INC.
Defendant

ORDER OF DISMISSAL

YOUNG, D.J.

After a hearing held on 10/7/2013, this Court Orders that Defendant's Motion to Dismiss is Allowed and for the reasons stated on the record the above entitled action be and hereby is Dismissed

By:    /s/ Jennifer Gaudet
Deputy Clerk

January 16, 2014

Notice mailed to counsel of record.

**SPA-2**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

TAWANNA FRAISER,                        :
                                        :
              Plaintiff,                :
                                        :
v.                                      :         NO. 3:12CV1182 (WGY)
                                        :
STANLEY BLACK & DECKER, INC.            :
                                        :
                                        :
              Defendant.                :

### JUDGMENT

      This action came on for consideration on defendant's Motion to Dismiss before the Honorable William G. Young, United States District Judge. On October 7, 2013, an Order entered granting the relief.

      It is therefore ORDERED and ADJUDGED that judgment is entered for the defendant Stanley Black & Decker, Inc. and the complaint is dismissed.

      Dated at Boston, Massachusetts, this 16th day of January 2014.


                    ROBIN TABORA, CLERK


                    By /s/ Jennifer Gaudet_____
                     Jennifer Gaudet
                     Deputy Clerk


EOD: ____1/16/2014_____